UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JAMAL D. FLOWERS | * | NO:    22-1209 |
| | * | |
| VERSUS | * | SECTION:    J |
| | * | JUDGE CARL J. BARBIER |
| MAGNOLIA MARINE TRANSPORT | * | MAGISTRATE: 4 |
| COMPANY | * | KAREN WELLS ROBY |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM IN OPPOSITION TO MOTION
### FOR PARTIAL SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

Plaintiff, Jamal Flowers, respectfully requests that this honorable Court deny the Motion

for Partial Summary Judgment filed by Defendant, Magnolia Marine Transport Company

("MMT") (R. Doc. 22). For the reasons set herein, Plaintiff avers that there are genuine issues of

material fact on whether he intentionally misrepresented or concealed material facts, and whether

those facts were material to MMT, and so summary judgment should be denied.[1]

### FACTUAL BACKGROUND

Flowers was first hired by MMT as a green deckhand in 2011.[2] He worked his way up from

deckhand to mate over the next several years, until he briefly left the company in 2017. After a

short time away at Genesis Marine, Flowers returned to MMT in 2017 and continued to work there

until 2019.[3] Flowers left MMT in 2019 and went to work at Magnolia Fleet, where he was able to

enter the steersman program.[4] After being laid off due to a slowdown in work, Flowers worked

---

[1] Plaintiff does not dispute that punitive damages are not available for his Jones Act or general maritime law claims at this time, so does not oppose that portion of MMT's Motion for Partial Summary Judgment.
[2] Post-Offer Placement Form, MMT000312, attached as Exhibit 1.
[3] Deposition of Jamal Flowers, at p. 95, attached as Exhibit 2.
[4] Flowers Dep. at pp. 145-146

1

land-based jobs until he could return to work at MMT, which finally occurred in May 2021.[5]

During his time with MMT, Flowers routinely had positive work evaluations.[6] Upon his rehire at MMT in 2021, Flowers worked as a mate/tankerman until he was injured at work on October 27, 2021. On that date, he was working with a green deckhand, Clayton Hearn, to tie up barges to the tow attached to the M/V KELLY LEE. As the barges were being brought together, there was space between two barges. Rather than waiting for the space to close, Hearn jumped between two barges to continue tying off the connection, but lost his footing and fell into the water. Flowers immediately went to assist Hearn to help him out of the water and, with assistance from another crew member, was able to do so. In that process, Flowers injured his left shoulder and neck, which he reported to his captain two days later, when the pain did not go away.[7]

On November 3, 2021, Flowers went to Mission Primary Care with complaints of left arm and chest pain, which continued and led to his seeing an orthopedic specialist on November 9, 2021. At that time, Flowers had left shoulder pain, with numbness and tingling radiating down his arm, which the doctor said was "very likely coming from his neck."[8] Dr. Hendrix restricted Flowers from his usual work, and recommended physical therapy, which Flowers completed in January 2022. After ongoing left shoulder and neck pain, Flowers sought second medical opinions from a neurosurgeon for his neck, Dr. Rand Voorhies, and an orthopedic surgeon for his left shoulder, Dr. Thomas Lyons. After an MRI revealed a torn labrum in the left shoulder, surgery was approved by MMT and performed in April 2023. At this time, Flowers continues to do physical therapy for his shoulder after the surgery, and also continues to have neck pain.

In addition to these physical conditions, Flowers has received psychological treatment from

---

[5] Flowers Dep. at p. 145-146.
[6] MMT Performance Evaluation Forms, attached as Exhibit 3.
[7] MMT Incident Report, attached as Exhibit 4.
[8] November 9, 2021 Report of Dr. Hendrix, attached as Exhibit 5, p. 4.

Dr. Beverly Howze for ongoing post-traumatic stress disorder, depressive disorder, and anxiety disorder related to the river rescue incident. Testing which she has performed has confirmed chronic depression and anxiety and, although he has received treatment from Dr. Howze for some time, his prognosis remains guarded as he continues to work on his traumatic reactions and phobic responses to water.[9]

Prior to this 2021 workplace incident, Flowers has been involved in minor vehicular accidents and workplace accidents for which he received very limited medical treatment, including for minor left shoulder pain and cervical strains. Flowers has never been diagnosed with or received treatment for any psychological or mental health conditions before October 2021. For each of the times that Flowers applied for work with, and was hired by, MMT, he underwent a physical. In 2011 and 2017, Flowers did not complete the medical questionnaires himself, as he had assistance in doing so.[10] When he applied for work with MMT in 2021, he again underwent a physical, but this was the first time he completed a medical questionnaire himself. He has testified that he completed it to the best of his ability, but that he thought the questionnaire was asking him about conditions or problems which he was currently having at the time of the physical.[11] As he was in no pain andhad  no physical problems when he applied for work with MMT, he did not report any of the other prior minor conditions for which he had seen doctors before. Indeed, MMT not only had Flowers complete the questionnaire, but also had him undergo a physical which included a lumbar MRI.[12]

Given his prior positive work history with MMT and the fact that he was physically fit at

---

[9] May 30, 2023 Report of Dr. Beverly Howze, attached as Exhibit 6.
[10] Flowers Dep. at pp. 155-156.
[11] Flowers Dep. at p. 156, 160-61. Flowers has also testified that he required assistance in school growing up, in special education, as well as assistance in passing his mate's exam given problems that he has reading and comprehending. Flowers Dep. at pp. 75-76.
[12] 2021 Physical Questionnaire, attached as Exhibit 7.

the time of his hire, Flowers believed that he would have been hired by MMT regardless of whether he reported prior minor incidents or not.[13]

The prior incidents which MMT faults Flowers for not adequate reporting includes a September 2017 motor vehicle collision in which he complained of neck and back pain, and was able to work at MMT with no problems. He had some lingering tightness in his neck for about a week thereafter, but received no additional medical treatment for any neck or back pain until February 2020.[14] On February 20, 2020, Flowers was involved in a motor vehicle collision in which he complained only of neck pain, a headache, and tingling in his forearms he attributed to airbag deployment.[15] He declined having any imaging performed, and sought no additional treatment beyond the emergency department on the day of the collision.[16] In September 2020, Flowers was driving a forklift for a prior employer when it jerked and he hit his head on the forklift cage. He was diagnosed with a cervical sprain and sprain in the left shoulder.[17] Although he did continue to receive medical treatment for this incident for several weeks after its occurrence, that treatment was primarily focused on the head injury, as the neck and shoulder pain resolved within two weeks of the incident.[18] He was released to regular duty with no restrictions and no permanent impairment on September 30, 2020. He was then able to pass a physical and work without any mental or physical problems until October 27, 2021, when he pulled a coworker from the river.

## **LAW AND ARGUMENT**

Under the general maritime law, a seaman has the right to receive maintenance and cure— "a small daily stipend to pay for food, lodging, and basic medical care." *Boudreaux v. Transocean*

---

[13] Flowers Dep. at pp. 164-65.
[14] September 22, 2017 Report from Baptist Memorial Hospital, attached as Exhibit 8; October 5, 2017 Report from Desoto Community Health, attached as Exhibit 9.
[15] February 20, 2020 Report from Merit Health River Region, attached as Exhibit 10.
[16] *Id.*
[17] September 14, 2020 Report of Nova Medical Center, attached as Exhibit 11.
[18] September 29, 2020 Report of Nova Medical Center, attached as Exhibit 12.

*Deepwater, Inc.*, 721 F.3d 723, 726 (5th Cir. 2013). This right is "intrinsic to the employment relationship and essentially unqualified: it cannot be contracted away by the seaman, does not depend on the fault of the employer, and is not reduced for the seaman's contributory negligence." *Id.* (internal citations omitted).

While maintenance and cure benefits may be awarded to a seaman who has suffered from a pre-existing injury, a seaman forfeits his or her right to maintenance and cure when he or she fails to disclose certain medical facts, or misrepresents those facts, when asked about them in an employment application. See *Brown v. Parker Drilling,* 410 F.3d 166, 170–71 (5th Cir. 2005) (*citing McCorpen v. Central Gulf Steamship Corp.*, 396 F.22 547 (5th Cir. 1968)). This is commonly known as the "*McCorpen* defense."

An employer can prevail on this defense only by establishing that: (1) the seaman intentionally concealed or misrepresented information concerning a prior condition or injury; (2) the misrepresented or concealed information was material to the employer's decision to hire the seaman; and (3) a causal connection between the non-disclosed injury/condition and an injury/condition complained of in the suit at bar. *McCorpen*, 396 F.2d at 548–49; *see also Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 301 (5th Cir. 2008). Nevertheless, "[i]f the vessel owner would have employed the seaman even had the requested disclosure been made, concealment will not bar the seaman's recovery of maintenance and cure." *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir.2006).

Plaintiff recognizes that he suffered minor pains in his neck and left shoulder in the years before his October 27, 2021 injury while working from the M/V KELLY LEE. While completing his pre-employment physical in 2021, the first he had completed on his own, his understanding

was only that he was being asked about his current conditions.[19] As he was having no problems at the time of his employment application and physical exam, Flowers did not report any prior minor conditions to his neck or shoulder. Indeed, there is no specific question regarding a "shoulder" injury on the questionnaire form.[20] As for his psychological condition, there is no evidence that Flowers has ever suffered any such injuries or illnesses prior to his most recent hire by MMT. Accordingly, there was nothing to report, and such injuries are not precluded by a *McCorpen* defense.

Regarding the second prong of the *McCorpen* defense, the materiality requirement, there is a genuine issue of material fact as to whether any prior back pain complaints would have made any change to MMT's decision to hire Flowers. In the September 2017 motor vehicle collision, Flowers reported neck and back pain after the accident, and received no additional treatment for any back pain complaints. While he did not report any prior back pain or injuries to MMT, he was nevertheless given an MRI of his lumbar spine at the time of his pre-employment physical.[21] A triable issue of fact exists "when it is unclear whether an employer's hiring decision would be affected by knowledge of a potential employee's previous injuries." *Jauch v. Nautical Services, Inc.*, 470 F.3d 207, 212 (5th Cir. 2006). Given that MMT performed not a simple x-ray, but an MRI on Flowers's lower back, and that the MRI showed no problems or injuries within his back, there is a question about what else MMT would have even done had Flowers reported a single instance of back pain several years prior to the return to MMT. Indeed, Flowers worked for MMT from 2011 to 2019 with only a small break in employment in 2017, with no physical problems or inabilities to perform his job. There are genuine issues of material fact as to whether a report of a

---

[19] Flowers Dep. at pp. 160-61.
[20] Ex. 7.
[21] April 22, 2021 Lumbar MRI, attached as Exhibit 13.

ingle instance of back pain in 2017 would have changed MMT's decision on hiring at all.

The causal link requirement of the *McCorpen* defense requires a defendant to show "a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." *Brown v. Parker Drilling,* 410 F.3d at 176 (quoting *Quiming v. Int'l Pac. Enters., Ltd.*, 773 F. Supp. 230, 236 (D. Haw. 1990)). However, the test applied is "not a causation analysis in the ordinary sense." *Johnson v. Cenac,* 599 F. Supp. 2d at 728. Rather, "the *McCorpen* defense will succeed if the defendant can prove that the old injury and the new injury **affected the same body part**." *Id.* (citing *Brown*, 410 F.3d at 176); *see also Weatherford v. Nabors Offshore Corp.*, No. 03-478, 2004 WL 414948, at *7 (E.D. La. Mar. 3, 2004) (emphasis added).

To the extent that the Court finds that Flowers did intentionally misrepresent prior medical information regarding his left shoulder and neck, Flowers avers that MMT's *McCorpen* motion may be granted as it relates to those injuries *alone*. The relief requested by Defendant in its motion should stop there because (1) MMT cannot meet the materiality component for Plaintiff's lower back injury and (2) because Plaintiff suffered additional injuries for which he seeks maintenance and cure, specifically including his post-traumatic stress disorder for which he has been undergoing medical treatment. MMT's Motion does not appear to apply to these other psychological injuries, as it makes no mention of them whatsoever.

In conclusion, there are genuine issues of material fact precluding summary judgment regarding the *McCorpen* defense as it applies to Plaintiff's maintenance and cure, punitive damages and attorney's fees claims. Further, Defendant has not carried its summary judgment burden (and its motion does not apply to) plaintiff's maintenance and cure, punitive damages, and attorney's fees claim related to his psychological conditions including anxiety, depression, nightmares, and PTSD. To the extent the Court finds for Defendant at all on this Motion, it should

be granted in part solely on the matters relating to the availability of punitive damages in Jones

Act and general maritime law claims, and to Plaintiff's neck and left shoulder injuries.

Respectfully Submitted,

*/s/ Megan C. Misko*
TIMOTHY J. YOUNG (22677)
TAMMY D. HARRIS (29896)
MEGAN C. MISKO (29803)
JOSEPH B. MARINO, III (29966)
**THE YOUNG FIRM**
400 Poydras Street, Suite 2090
New Orleans, Louisiana 70130
Telephone (504) 680-4100
Facsimile (504) 680-4101
tjy@theyoungfirm.com
tdh@theyoungfirm.com
mcm@theyoungfirm.com
jbm@theyoungfirm.com

8