UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMAL D. FLOWERS | CIVIL ACTION |
| VERSUS | NO. 22-1209 |
| MAGNOLIA MARINE TRANSPORT COMPANY | SECTION: "J"(4) |

## ORDER AND REASONS

Before the Court is a *Motion for Partial Summary Judgment* **(Rec. Doc. 22)** filed by Magnolia Marine Transport Company ("MMT"); an opposition (Rec. Doc. 25) filed by Plaintiff, Jamal D. Flowers; and a reply (Rec. Doc. 28) filed by MMT. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be granted in part.

## FACTS AND PROCEDURAL BACKGROUND

This case arises out of an incident that took place on or about October 27, 2021 aboard the M/V KELLY LEE, which is owned by MMT. Flowers, a Jones Act seaman, alleges that, on that date, he was working with a green deckhand to tie up barges to the tow attached to the M/V KELLY LEE. As the barges were brought together, rather than waiting for the space to close, the deckhand jumped between the barges to continue tying off the connection, but he lost his footing and fell into the water. Flowers went to assist the deckhand out of the water, and in that process, Flowers injured his back, left shoulder, and neck. Flowers reported the injury to the captain two days later, when the pain did not go away.

1

MMT hired Flowers as a green deckhand in 2011, and he worked his way up from deckhand to mate in 2017. He then worked for Genesis Marine, MMT again, Magnolia Fleet, and then in May 2021, he finally returned to working as a mate/tankerman at MMT. After his October 2021 injury, Flowers filed the instant suit against MMT on May 3, 2022, seeking, *inter alia*, maintenance and cure benefits as well as punitive damages under general maritime law.

The instant motion for summary judgment is related to Flowers' claims for maintenance and cure and punitive damages. MMT notes that punitive damages are not recoverable as a matter of law for alleged gross negligence and unseaworthiness, so Flowers' claim for punitive damages should be dismissed. (Rec. Doc. 22-1, at 2). In his opposition memorandum, Flowers concedes that punitive damages are not available for his Jones Act or general maritime law claims, and he does not oppose that portion of MMT's motion for partial summary judgment. (Rec. Doc. 25, at 1 n. 1).

MMT also points to evidence that Flowers intentionally concealed pre-employment injuries to his left shoulder, back, and neck upon being hired by MMT, so, in accordance with the ruling in *McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547 (5th Cir. 1968), MMT is entitled to judgment as a matter of law dismissing Flowers' maintenance and cure claim, as well as any claims premised on MMT's purported failure to provide maintenance and cure (attorneys' fees, punitive damages, and additional compensatory damages). (Rec. Doc. 22-1, at 1-2).

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

## **DISCUSSION**

When MMT hired Flowers in April 2021, Flowers represented that he had not ever injured his neck, back, arm, or other part of his body on MMT's pre-employment medical questionnaire. (Rec. Doc. 22-1, at 6). However, Flowers was previously in a car accident where the airbags deployed in September 2017, after which he was treated for neck, back and left shoulder injuries. *Id.* He was involved in another car accident where the airbags deployed in February 2020, after which he was treated for pain in his left shoulder and neck. *Id.* In September 2020, Flowers stuck a steel pole while operating a forklift, causing a ligament sprain in his cervical spine, girdle sprain in his left shoulder, and head contusion. *Id.* at 5.

Generally, a Jones Act employer/vessel owner has an obligation to provide maintenance and cure for any seaman employee if they suffer injuries or become ill while in the service of a vessel. *The Osceola*, 189 U.S. 158, 175 (1903). The Fifth Circuit has explained that, "[t]he vessel owner's obligation to provide this

compensation does not depend on any determination of fault, but rather is treated as an implied term of any contract for maritime employment." *Jauch v. Nautical Servs.*, 470 F.3d 207, 212 (5th Cir. 2006). Nonetheless, maintenance and cure will not be owed if it is determined that the seaman "knowingly or fraudulently concealed his condition from the vessel owner at the time he was employed." *Id.* (citing *McCorpen*, 396 F.2d at 548). "Where the shipowner requires the seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure." *McCorpen*, 396 F.2d at 549. To establish the *McCorpen* defense, an employer must show that (1) the seaman intentionally misrepresented or concealed medical facts; (2) the nondisclosed facts were material to the employer's decision to hire the seaman; and (3) a causal link exists between the withheld information and the injury that is the subject of the complaint. *Id.* at 548–49.

MMT argues that there is no genuine issue of material fact that all three prongs of the *McCorpen* defense are satisfied because Flowers intentionally concealed his prior injuries, the concealment was material to MMT's decision to hire him, and a causal link exists between Flowers' concealed injuries and those he allegedly sustained on the vessel. (Rec. Doc. 22-1, at 7-10). In response, Flowers states that he completed the medical questionnaire to the best of his ability, but he thought that the questionnaire was asking him about conditions or problems he was currently having, not prior conditions. (Rec. Doc. 25, at 3). Although Flowers recognizes that he suffered

"minor pains in his neck and left shoulder in the years before his October 27, 2021 injury," he argues that, because he was having no problems at the time of his employment application and physical exam, and because he had never previously suffered psychological injuries or illnesses, there was nothing to report at the time of his 2021 hiring. *Id.* at 5-6. He also argues that, as to the materiality requirement of the *McCorpen* defense, an issue of fact remains as to whether any prior back pain complaints would have changed MMT's decision to hire him, because MMT performed an MRI on his lower back which showed no problems or injuries. *Id.* at 6. Flowers also argues that MMT's *McCorpen* motion should not apply to his additional injuries for which he seeks maintenance and cure, specifically his post-traumatic stress disorder for which he has been undergoing medical treatment. *Id.* at 7.

In reply, MMT notes that Flowers' deposition testimony contradicts the arguments he makes in his opposition memorandum: rather than testifying that he failed to report his injuries because they were minor, he testified that he withheld medical facts because he wanted to go back to work on the river. (Rec. Doc. 28, at 2-3) (citing Flowers Deposition, Rec. Doc. 22-2, at 17). MMT also notes that Flowers' argument that he thought the medical questionnaire was only asking about his current conditions ignores the clear label on the questionnaire, which is entitled "Medical History." *Id.* (citing Rec. Doc. 22-3, at 1). MMT also argues that Flowers' argument regarding materiality does not overcome the MMT's Director of Personnel's declaration that MMT would not have hired Flowers if he had disclosed his prior medical conditions. *Id.* at 5-6 (citing Lenoir Declaration, Rec. Doc. 22-10). Finally, as

to Flowers' psychological conditions, MMT points to Flowers' testimony that the source of depression was that he was not working, rather than caused by the incident itself. *Id.* at 6-7.

### A. Intentional Misrepresentation or Concealment

MMT argues that, because Flowers intentionally concealed his prior injuries to his back, neck, and other body parts (his left shoulder) on his pre-employment medical questionnaire, the first element of its *McCorpen* defense is established. (Rec. Doc. 22-1, at 7-8).

"Where the shipowner requires a seaman to submit to a prehiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure." *McCorpen*, 396 F.2d at 549. The element of intentional concealment of medical facts "does not require a finding of subjective intent." *Id*. The intentional concealment prong of the *McCorpen* defense is an "essentially" objective inquiry where the employer "need only show that the seaman fail[ed] to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information." *Meche v. Doucet*, 777 F.3d 237, 247 (5th Cir. 2015) (quoting *Vitovich v. Ocean Rover O.N.*, No. 94–35047, 106 F.3d 411, 1997 WL 21205, at *3 (9th Cir. Jan. 14, 1997)) (internal quotation marks omitted); *see also Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 176 (5th Cir. 2005) ("The view that the intentional concealment prong of *McCorpen* is an essentially objective inquiry has also been adopted by courts in this circuit.").

Here, Flowers completed a "General Physical Form" on April 22, 2021, circling "N" for No when asked if he had previously experienced an injury to his back, neck, arm, or other body parts. (Rec. Doc. 22-3). However, Flowers had previously injured his back, neck, and left shoulder (a part of his arm) in his car accidents in 2017 and 2020 and his forklift accident in 2020. Follow-up evaluation reports for the forklift injury after the accident described a head injury, cervical spine injury, and left shoulder pain. (Rec. Docs. 22-4; 22-6). His medical records for hospital visits after the car accidents also list injuries to his left shoulder, back, and neck. (Rec. Docs. 22-8, 22-9). Flowers also testified as to those same injuries in his deposition. (Rec. Doc. 22-2, at 4-10).

Flowers admits that he "suffered minor pains in his neck and left shoulder in the years before" the instant injuries. (Rec. Doc. 25, at 5). Flowers testified that he was aware it was important for MMT to understand his medical history and for him to be truthful and honest about that history. (Flowers Deposition, Rec. Doc. 22-2, at 15). He argues that his failure to disclose his prior injuries is justified because he misunderstood the medical questionnaire to be asking about his current conditions. (Rec. Doc. 25, at 5-6). However, the medical questionnaire is entitled "Medical History," so Flowers' misunderstanding is not supported by the evidence. MMT asked Flowers about his medical history, including specific injuries to his neck, back, arms, and other body parts, and Flowers does not dispute that these questions were reasonably related to his ability to do the job for which he applied. Thus, as to Flowers' injuries to his back, neck, and left shoulder, the record reflects that Flowers

8

failed to disclose his pre-existing medical information on a questionnaire designed to elicit such information and therefore the first element of MMT's *McCorpen* defense is satisfied as to Flowers' back, neck, and left shoulder injuries. As to any other injuries, including psychological injuries or post-traumatic stress disorder, Flowers did not previously experience these injuries, and the Court cannot find that he concealed or misrepresented them.

### B. Materiality

Under the second prong of *McCorpen*, "[t]he fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis." *Brown*, 410 F.3d at 175. A seaman's "history of back injuries is the exact type of information sought by employers." *Id.* Moreover, courts have granted summary judgment on the materiality prong "when the evidence establishes that full disclosure of the plaintiff's medical condition would have prompted his employer to conduct further medical evaluation prior to making a hiring decision." *White v. Sea Horse Marine, Inc.*, No. 17-9774, 2018 WL 3756475, at *3 (E.D. La. Aug. 8, 2018). "However, if an employee can show that, even if undisclosed facts were material, he or she would have been hired regardless, the employer is not entitled to the *McCorpen* defense to evade its maintenance and cure obligation." *Hare v. Graham Gulf, Inc.*, 22 F. Supp. 3d 648, 654 (E.D. La. 2014) (citing *McCorpen*, 396 F.2d at 551–52). A triable issue of fact remains when it is unclear whether an employer's hiring decision would be affected by knowledge of a potential employee's

previous injuries. *Id.* (citing *Jauch*, 470 F.3d at 212). The principal inquiry becomes whether disclosure of the allegedly concealed medical information would have prevented the employee from being onboard the vessel at the time of the accident, and thus avoiding the accident and complained of injuries. *Jauch*, 470 F.3d at 212–13.

Here, it is undisputed that MMT asked certain questions of Flowers about his prior medical conditions in the employment application, and Flowers does not dispute that these questions were reasonably related to his ability to do the job for which he applied. The fact that these questions were asked makes the answers material for *McCorpen* purposes. MMT also cites to the declaration of its Director of Personnel, Chris Lenoir, who states that "if Flowers had disclosed his prior left shoulder, neck and back injuries on the Questionnaire, I would have required additional medical information, including medical records, and further evaluation of his ability to perform his duties before deciding to hire him" (Rec. Doc. 22-10, at 2). Lenoir goes on to state that had his injuries been disclosed, they "would have materially impacted MMT's decision to hire him." *Id.*

In his opposition, Flowers notes that MMT gave him an MRI of his lumbar spine as part of his pre-employment physical. (Rec. Doc. 25). Because MMT "performed not a simple x-ray, but an MRI of Flowers's lower back, and the MRI showed no problems or injuries within his back," Flowers argues that there is "a question about what else MMT would have even done had Flowers reported a single instance of back pain several years prior to the return to MMT." (Rec. Doc. 25, at 6).

10

Flowers' conclusory statement, without evidentiary support, does not overcome the evidence that MMT submitted regarding materiality. Thus, as to the second element of MMT's *McCorpen* defense, the Court finds that no genuine issue of material fact exists as to the materiality of Flowers's preexisting neck, back, and shoulder conditions on MMT's decision to hire him.

### C. Similarity of Injuries

A party seeking to employ a *McCorpen* defense is not required to show that the plaintiff's preexisting injuries were the sole cause of the present injury claimed. *Brown*, 410 F.3d at 176. Instead, "All that is required is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." *McCorpen*, 396 F.2d at 549. This Court has held that when both a plaintiff's prior injuries and present injuries concern the lower back, the causal link has been met and summary judgment on the issue of the *McCorpen* defense is appropriate. *Foret v. St. June, LLC*, No. 13-5111, 2014 WL 4539090, at *5 (E.D. La. Sept. 11, 2014) (citing Weatherford v. Nabors Offshore Corp., No. 03–0478, 2004 WL 414948 at *3 (E.D. La. Mar. 3, 2004) (Duval, J.); Keys v. Haliburton Co., No. 88–1523, 1989 WL 54224 at *4 (E.D. La. May 17, 1989) (Livaudais, J.)).

Here, there is no question that Flowers's previously concealed injuries to his lower back, neck, and left shoulder affect the exact same body parts as the injury at issue in this case: injuries to his back, neck, and left shoulder. Flowers does not dispute that MMT established the causal link between Flowers' prior and current injuries. Because of the identical nature of Flowers' previous injuries to his left

11

shoulder, neck, and lower back, the Court finds that a causal link exists between his pre-existing injuries and those alleged in the lawsuit.

Flowers argues that his alleged psychological injuries are different than any prior injuries he incurred, and MMT acknowledges that there are no records of treatment for prior psychological injuries. (Rec. Doc. 28, at 6). Instead, MMT notes Flowers' testimony that "the source of" his depression was his inability to work before he returned to MMT in 2021. *Id.* As the moving party with the burden of proof at trial, MMT has the burden of coming forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. This single line of deposition testimony does not prove that Flowers' alleged psychological injuries, including alleged post-traumatic stress disorder from the incident in this case were causally linked to any withheld injury information. Accordingly, the third *McCorpen* element is not met as to Flowers' psychological injuries.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that MMT's *Motion for Partial Summary Judgment* **(Rec. Doc. 22)** is **GRANTED in part.** Flowers' punitive damages claims and for claims related to maintenance and cure involving injuries to his left shoulder, back, and neck, only, are **DISMISSED.** The motion is denied as to Flowers' maintenance and cure claims for his psychological injuries.

New Orleans, Louisiana, this 8th day of September, 2023.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE